IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

DR. JEFFREY THOMAS VASSEUR,      :
                                              :

      Plaintiff,                    :

                                              :

      v.                             :        CASE NO:  7:22-cv-97 (WLS)

                                            :

VALDOSTA STATE UNIVERSITY,     :
And BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA,   :
d/b/a VALDOSTA STATE UNIVERSITY, :

                                             :

      Defendants.                 :
_____

**ORDER**

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint, which was filed on February 9, 2023. (Docs. 9 & 11.) Therein, Defendant contends that Plaintiff's Amended Complaint should be dismissed with prejudice for four (4) reasons: (1) Plaintiff has not pled sufficient facts to show that he complied with the administrative prerequisites to pursue any Title VII claim and/or Age Discrimination in Employment Act ("ADEA") claim; (2) any Title VII age discrimination claim Plaintiff asserts is subject to dismissal as Title VII does not protect against age-based discrimination; (3) Plaintiff's Amended Complaint still fails to state a claim even under Title VII's actual protected classes; and (4) Defendant has Eleventh Amendment immunity from any private actions brought pursuant to the ADEA. (Doc. 11.) The Court notes for the purposes of the record that Defendant did not move for the dismissal of Plaintiff's other alleged claims which allegedly also arise under the "First and Fourteenth Amendments to the U.S. Constitution and under 42 U.S.C. §§ 1981, 1983, 1985, and 1986." (Doc. 9 at 1.)

Plaintiff for the second time in this action, filed an untimely Response in opposition. (Doc. 14.) Plaintiff refiled that Response in opposition on March 8, 2023. (Doc. 15.) The Court notes for the purposes of the record that Plaintiff's Responses in opposition are identical. (Docs. 14 & 15.) Defendants timely filed a Reply on March 9, 2023. (Doc. 16.) Accordingly, briefing has now concluded and Defendant's Motion to Dismiss is ripe for disposition. For

the reasons that follow, Defendant's Motion to Dismiss is **GRANTED in Part and DENIED in part**.

## RELEVANT PROCEDURAL HISTORY

Plaintiff, Dr. Jeffrey Vasseur, commenced this action by filing a Complaint with this Court on September 18, 2022. (Doc. 1.) In his original Complaint Plaintiff asserted claims for relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, as well as 42 U.S.C. §§ 1981, 1983, 1985 & 1986 (Doc. 1.)

Pursuant to Federal Rule of Civil Procedure 4(m) Plaintiff had ninety (90) days to perfect service after the filing of the Complaint, or no later than Saturday, December 17, 2022. As of December 20, 2022, Plaintiff had not shown service of process on Defendant. Accordingly, this Court ordered Plaintiff to show cause why the Complaint should not be dismissed for failure to serve process. (Doc. 4.) Shortly before that Order was entered Defendant, the Board of Regents of the University System of Georgia, entered a notice of special appearance, filing a Motion to Dismiss Plaintiff's Complaint. (Doc. 3.)

Plaintiff complied with this Court's Order to show cause (Doc. 5) on December 29, 2022 (Doc. 5) and filed a Response in Opposition to the Defendant's original Motion to Dismiss on January 11, 2023. (Docs. 3 & 5.) Included within Plaintiff's Response in Opposition was a Motion to Amend his Complaint, as well as a Motion for Joinder. (Doc. 6.) The Court granted Plaintiff's Motion to Amend the Complaint on January 19, 2023. (Doc. 8.) In that Order, the Court also denied Defendant's Motion to Dismiss as Moot without prejudice as well as Plaintiff's Motion for Joinder without prejudice. (Doc. 8.)

Plaintiff filed his Amended Complaint on January 26, 2023. (Doc. 9.) In his Amended Complaint Plaintiff asserts claims for relief pursuant Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623, and 42 U.S.C. §§ 1981, 1983, 1985 & 1986. (Doc. 9.)

Defendant, the Board of Regents of the University System of Georgia, moved to dismiss on February 9, 2023. (Doc. 11.) Plaintiff filed his untimely Responses on March 3, and March 8, respectively. (Docs. 14 & 15.) Defendant filed a Reply on March 9, 2023. (Doc. 16.) Accordingly, briefing has now concluded, and this issue is ripe for disposition.

## RELEVANT FACTUAL SUMMARY[1]

Plaintiff is a former employee of the English Department at Valdosta State University. (Doc. 9 ¶ 3.) Plaintiff was employed as a member of English Department for over twenty-five (25) years.[2] (*Id.*) According to Plaintiff, prior to the 2017-2018 school year, Defendant and its administrative staff in the English Department showed great respect and admiration for Plaintiff. (Doc. 9 ¶ 9.) Plaintiff alleges that he received outstanding reviews on his teaching prior to this term. (*Id.*)

At some point in the 2017-2018 school year, Plaintiff utilized "salty language" in the classroom. (Doc. 9 ¶ 10.) While Plaintiff's Amended Complaint is devoid of context or outline for the following sequence of events, the utilization of "salty language" appears to have sent Plaintiff's career at the Valdosta State University English department into a nosedive.

Specifically, Plaintiff alleges that despite his use of "salty language" occurring on only one occasion, Defendant, through its employee, Donna Sewell[3], subjected Plaintiff to a barrage of unsubstantiated attacks charging racism, physical violence and intimidation. (Doc. 9 ¶¶ 10-11.) It is Plaintiff's position that these attacks on his character continued through backdoor channels and private conversations, creating "an atmosphere of mystery and suspicion" and somehow leading to further charges of Plaintiff attacking and scaring students. (Doc. 9 ¶ 11.)

While not explicitly clear from Plaintiff's Complaint, it would appear that the charges of Plaintiff scaring and attacking students led to one Dr. Mark Smith sending an email to Plaintiff "alleging that Plaintiff was a danger to Defendant's community." (Doc. 9 ¶ 13.) While once again not explicitly clear, it would appear that Dr. Smith also had placed the Valdosta State University Police on notice regarding Plaintiff's behavior and forwarded an alleged incident report to Dean Connie Richards. (Doc. 9 ¶ 13.) Plaintiff alleges that he responded to Dr. Smith's email in December 2017. (Doc. 9 ¶ 14.)

---

[1] The Court notes for the purposes of the record that at this stage of the proceedings, the Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

[2] The Court notes for the purposes of the record that it would appear that Plaintiff was employed as a Professor in the English Department for over twenty-five years, but that is not explicitly stated in Plaintiff's Complaint.

[3] The Court notes for the purposes of the record that Plaintiff alleges that Donna Sewell is the Department Head for the English Department. Donna Sewell is not named as a Defendant in this action.

Seemingly unrelated to the present claim, but included within the Amended Complaint, on January 20, 2018, one Dr. Sewell, without notice assigned Plaintiff a SMARTPATH course. (Doc. 9 ¶ 15.) The Amended Complaint then jumps to February 13, 2018, when Plaintiff's father was severely burned. (Doc. 9 ¶ 16.) Plaintiff's father's injuries appear to have led to Plaintiff taking time off to take care of his mother and father. (Doc. 9 ¶ 16.) Without any context as to what this statement means Plaintiff then states that at this time he "felt overwhelmed by prior generalizations, Dr. Sewell's constant blurring of his background and record, and the bad faith reports."[4] (Doc. 9 ¶ 16.)

When Plaintiff returned to the classroom on March 5, 2018, only one student, Ms. Wilson, was present. (Doc. 9 ¶ 17.) Ms. Wilson allegedly wished to discuss the results of midterm exam essay. (*Id.*) Plaintiff and Ms. Wilson walked over to the Student Success Center, which led to Dr. Sewell unilaterally pulling Ms. Wilson out of Plaintiff's course without any notice.[5] (*Id.*) After this incident, at some point Dr. Sewell presented Plaintiff with and demanded that Plaintiff sign an action plan, allegedly claiming Plaintiff "had no choice" but to sign. (Doc. 9 ¶ 18.) Dr. Sewell also allegedly stated that Plaintiff is "scary to students" and that "no faculty member has more complaints than you." (Doc. 9 ¶ 19.)

On March 25, 2018, Plaintiff received his annual review from Dr. Sewell and was allegedly shocked by its contents. (Doc. 9 ¶ 20.) Plaintiff therefore met with one Dr. James T. Laplant and Assistant Dean Teresa Grove, on March 26, 2018. (Doc. 9 ¶ 21.) At that meeting, Plaintiff expressed concern regarding the lack of due process, accusations of him having a "race problem" with his teaching and pedagogy and statements regarding Plaintiff allegedly "attacking two students." (Doc. 9 ¶ 21.) The Court notes for the purposes of the record that Plaintiff does not elaborate what came of that meeting.

Plaintiff's Amended Complaint then fast forwards to the Fall 2018 semester, during which Plaintiff alleges that he was working a full schedule, in addition to being an advisor for

---

[4] The Court notes for the purposes of the record that it is impossible to tell from Plaintiff's Amended Complaint what Plaintiff means by blurring of his background and record and bad faith reports as it relates to Dr. Sewell as of February 2018. (Doc. 9.) It is impossible to tell, because Dr. Sewell is not mentioned as having done anything, other than reassigning Plaintiff a class in January, that would relate to those statements, before February 2018.

[5] The Court notes for the purposes of the record that Plaintiff appears to allege that Ms. Wilson's take home exam had issues with plagiarism and lack of preparation. (Doc. 9 ¶ 17.)

Odradek.[6] (Doc. 9 ¶ 22.) Plaintiff allegedly spoke with Dr. Sewell about Odradek, and then goes on to state that under the national standard, a professor receives a course leave per semester, two courses per academic year. (Doc. 9 ¶ 22.) Plaintiff does not allege that he was denied course leave, however.

Plaintiff's Amended Complaint then jumps to a statement that Plaintiff was informed by Dr. Thompson and Dr. Sewell that human resources classroom observations were there to watch and observe and make sure students have a good time. (Doc. 9 ¶ 23.) From this the Court was able to extrapolate that it would appear that Plaintiff's classes were being monitored.

Once again, without context, Plaintiff then states that a student named Ms. Page met with Dr. Sewell to discuss grievances about Plaintiff's course assignments. (Doc. 9 ¶ 24.) Ms. Page was transferred by Dr. Sewell into another professor's course, without consulting Plaintiff. (*Id.*) Ms. Page then allegedly texted a friend who was in the class, who informed the rest of the class about "what occurred with Dr. Sewell." (Doc. 9 ¶ 24.) The Court notes for the purposes of the record that it is patently unclear what "what occurred with Dr. Sewell" means in this context.

The Amended Complaint then fast forwards to March 10, 2019, when Dr. Thompson allegedly spoke with Dr. Sewell about how "one should never do something like this without at least talking once with the instructor." (Doc. 9 ¶ 25.) The Court believes that Plaintiff is referencing Dr. Sewell's decision to transfer Ms. Page, but it is once again not clear. Dr. Sewell allegedly responded "[a]re you sure you wanted to be associated in the Provost's mind with the name of Jeffrey Vasseur." (Doc. 9 ¶ 25.)

The Amended Complaint then states that Plaintiff began to worry about his students keeping up with reading and assignments on August 22, 2019. (Doc. 9 ¶ 26.) And that on September 3, 2019, one Ms. Peguesse called the Valdosta State Police Department following an interaction with Plaintiff at the library. (Doc. 9 ¶ 27.) Later that month it would appear in response to the September 3, 2019, incident, Plaintiff had a meeting with Human Resources

---

[6] The Court notes for the purposes of the record that Plaintiff did not define what Odradek was, or how it related to course leave.

in which an agreement was forced into Plaintiff's hands and he was told to "[j]ust sign the fucking thing."[7] (Doc. 9 ¶ 28.)

The Amended Complaint then fast forwards to the Spring Semester 2020, during which Plaintiff took a paid medical leave of absence to have surgery on a "Hagland's deformity and ripped Achilles tendon." (Doc. 9 ¶ 29.) On October 5, 2020, another student allegedly complained to Dr. Sewell about Plaintiff's course. (Doc. 9 ¶ 30.)

Following these Complaints, an online meeting was scheduled in which Plaintiff requested help, faculty representative and the fact that he did not wish to have the meeting online. (Doc. 9 ¶ 31.) While not clear from Plaintiff's Amended Complaint, it would seem that Plaintiff attended the meeting and was informed that Dr. Sewell was the ongoing department head in the English Department. (Doc. 9 ¶ 31.) Another meeting was scheduled in May 2021 at which Plaintiff was provided with another action plan and informed that Dr. Sewell would continue to be his supervisor despite objections. (Doc. 9 ¶ 32.) At some point thereafter, Plaintiff resigned, in response to Defendants permitting such defamatory statements against Plaintiff's character, employment skills and ability, and reputation within the academic community. (Doc. 9 ¶ 46.)

The Court notes for the purposes of the record that at no point does Plaintiff claim that he filed a charge with the EEOC regarding any of the above mentioned discrimination. The Court also notes for the purposes of the record that at no point does Plaintiff allege facts about his age or race playing any role in this disciplinary proceedings. Plaintiff did insert one conclusory statement, as to those factors. (Doc. 9 ¶ 49.)

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted.  A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative

---

[7] The Court notes for the purposes of the record that Plaintiff never contextualizes what this meeting with human resources was about, what the agreement pertained to, what its contents stated and generally just leaves it to the Court to fill in the blanks.

level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm and the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw Plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). The Supreme Court instructs that while on a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint). In addition to considering the four corners of a complaint, a district court may also consider an extrinsic document only if it is central to a plaintiff's claim and its authenticity has not been challenged. *SFM Holdings, Ltd. v. Banc of America Sec., LLC.*, 600 F.3d 1334, 1337 (11th Cir. 2010).

As stated *supra*, Defendant contends that Plaintiff's Amended Complaint should be dismissed for four (4) reasons: (1) Plaintiff has not pled sufficient facts to show that he complied with the administrative prerequisites to pursue any Title VII claim and/or ADEA claim; (2) any Title VII age discrimination claim Plaintiff asserts is subject to dismissal as Title VII does not protect against age-based discrimination; (3) Plaintiff's Amended Complaint still fails to state a claim even under Title VII's actual protected classes; and (4) Defendant has

Eleventh Amendment immunity from any private actions brought pursuant to the ADEA. (Doc. 11.)

In Response, Plaintiff contends that (1) he could not utilize the administrative remedies available under Title VII due to the egregious nature of Defendants' conduct; (2) that Plaintiff's Age Discrimination claim is not being brought pursuant to Title VII; (3) that Plaintiff has stated a valid claim under Title VII's actual protected classes, as race and gender were the primary motive for the conduct against him; (4) that Defendant University System of Georgia ("USG") had waived its Eleventh Amendment immunity by participating in litigation. (Docs. 14 & 15.) The Court notes for the purposes of the record that Plaintiff cited no case law in support of any of these arguments. (*See* Docs. 14 & 15.)

As Plaintiff's Title VII and Age Discrimination claims are subject to dismissal for failure to exhaust administrative remedies, specifically filing a charge of discrimination with he EEOC, the Court declines to reach the merits of Defendant's remaining arguments. For the reasons that follow, Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 11) is **GRANTED in PART** and **DENIED in PART**.

I.      **Plaintiff's Title VII and ADEA Claims are Subject to Dismissal as Plaintiff Failed to Exhaust Available Administrative Remedies**

According to the United States Court of Appeals for the Eleventh Circuit, before filing a suit in federal court under Title VII of the Civil Rights Act of 1964 or the ADEA, plaintiffs must first exhaust their administrative remedies by filing a charge of discrimination with the EEOC. *Reed v. Winn Dixie, Inc.*, 677 Fed. Appx. 607, 609-10 (11th Cir. 2017). For a Title VII or ADEA claim "to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (citing *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999)) (*See* 42 U.S.C. § 2000e-5(e)(1)(*See Sheffield v. UPS*, 403 Fed. Appx. 452, 454 (11th Cir. 2010) ("in order to bring an action for age discrimination or retaliation under the ADEA, a plaintiff must first file a timely charge of discrimination with the EEOC or appropriate state or local agency.")

According to the Supreme Court of the United States, if a party fails to comply with the above-mentioned charge-filing requirement, the Plaintiff cannot assert a claim in court. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). However, the above-mentioned

charge-filing requirements, specifically the 180-day requirement, is not absolute. It is not absolute, because like a statute of limitations, it is "subject to waiver, estoppel and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982.)

In the present case, Defendant moves to dismiss Plaintiff's Amended Complaint in its entirety because Plaintiff had not pled sufficient facts to show that he complied with the administrative prerequisites to pursue any Title VII claim and/or ADEA claim. (Doc. 11.) While not explicitly stated, the Court was able to infer from Plaintiff's Response (Doc. 14) that it is Plaintiff's contention that the EEOC requirement should be subject to equitable tolling.[8] It is Plaintiff's contention that the EEOC requirements should be subject to equitable tolling, because Defendant's egregious conduct led to Plaintiff's teaching career being stalled by the perception that Plaintiff was an unhinged wild man.  (Doc. 14 at 4.) Plaintiff alleges that this required Plaintiff to immediately seek "recourse through the courts rather than waiting for one to suggest he accept a false reality and suffer in silence."[9] (Doc. 14 at 4.) However, Plaintiff does not identify specific conduct by Defendant or how that conduct prevented Plaintiff from filing a Complaint with the EEOC.

In the United States Court of Appeals for the Eleventh Circuit, equitable tolling of the limitations period for bringing a charge of discrimination with the EEOC suspends the period "'until the facts which would support a cause of action are apparent to a person with a reasonably prudent regard for his rights.'" *Cocke v. Merrill Lynch & Co., Inc.*, 817 F.2d 1559, 1561 (11th Cir. 1987) (ADEA case), (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975) (Title VII case)). Equitable tolling is also applicable in certain extraordinary circumstances such as: (1) when a state court action is pending; (2) when the defendant conceals an act supporting the cause of action; or (3) when the defendant misled the complainant regarding the nature of their rights. *Manning v. Carlin,* 786 F.2d 1108, 1109 (11th Cir. 1986.) Equitable tolling, however, should not be liberally construed, but rather only applied in certain circumstances. *See Mohasco Vorp v. Silver*, 477 U.S. 807, 826 (1980.)

---

[8] The Court infers an equitable tolling argument from Plaintiff's claim that he has pled "sufficient facts to show that he could not use his administrative remedies under Title VII due to the egregious nature of the conduct displayed by Defendant and its employees." (Doc. 14 at 4.)

[9] The Court notes for the purposes of the record that Plaintiff did not immediately seek recourse from the Courts, however, because the last allegedly discriminatory action taken against Plaintiff would have occurred at some point in May 2021. Plaintiff did not file his original Complaint in this matter until September 18, 2022, well over one full year later. (Doc. 1.)

In the present case, equitable tolling of the limitations period for bringing a charge of discrimination with the EEOC for either Plaintiff's Title VII or ADEA claims would be improper because on the face of Plaintiff's Amended Complaint (Doc. 9), none of the above-mentioned extraordinary circumstances are applicable, and Plaintiff failed to file a charge of discrimination with the EEOC within 180 days of the last allegedly discriminatory act.[10] Accordingly, as Plaintiff failed to establish that he timely filed a charge of discrimination with the EEOC or that equitable tolling is appropriate, Defendant's Motion to Dismiss Plaintiff's Title VII and ADEA based claims for failure to exhaust administrative remedies is **GRANTED in PART**. Defendant's Motion (Doc. 11) is **GRANTED** as to Plaintiff's Title VII and ADEA based claims. Defendant's Motion is **DENIED**, however, as to any claim Plaintiff asserts under the "First and Fourteenth Amendments to the U.S. Constitution and under 42 U.S.C. §§ 1981, 1983, 1985, and 1986" as Defendant did not address those claims. (Doc. 9 at 1.)

## CONCLUSION

In summation, Defendant's Motion to Dismiss (Doc. 11) is **GRANTED in part** and **DENIED in part**. Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's Title VII and ADEA claims, because Plaintiff failed to comply with the statutory prerequisite that Plaintiff timely file a charge of discrimination with the EEOC. Defendant's Motion to Dismiss (Doc. 11) is **DENIED**, however, as to any claim Plaintiff asserts under the "First and Fourteenth Amendments to the U.S. Constitution and under 42 U.S.C. §§ 1981, 1983, 1985, and 1986" as Defendant did not address those claims in their Motion. (Doc. 9 at 1.)

**SO ORDERED**, this 24th day of March 2023.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[10] The Court notes that it was able to ascertain drom the record as pled, that the last allegedly discriminatory act occurred at some point in May 2021. Plaintiff alleges no further dates or facts after the May 2021 meeting with Dr. Sewell.