**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| DR. JEFFERY THOMAS VASSEUR, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CASE NO.: 7:22-CV-97 (WLS) |
| | : | |
| VALDOSTA STATE UNIVERSITY, | : | |
| AND BOARD OF REGENTS OF | : | |
| THE UNIVERSITY SYTEM OF | : | |
| GEORGIA, d/b/a/ | : | |
| VALDOSTA STATE UNIVERSITY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

**I.   INTRODUCTION**

Before the Court is Defendant Board of Regents of the University System of Georgia's ("Defendant") Motion for Judgment on the Pleadings (Doc. 19), which was filed on April 3, 2023. Therein, Defendant contends that it is entitled to judgment on the pleadings for any claims still remaining in Plaintiff's Amended Complaint (Doc. 9). Defendant also filed a Motion to Stay Discovery and All Pre-Trial Deadlines Pending Resolution of Defendant's Motion for Judgment on the Pleadings (Doc. 20). For the reasons that follow Defendant's Motion for Judgment on the Pleadings (Doc. 19) is **GRANTED**, and Defendant's Motion to Stay Discovery and All Pre-Trial Deadlines (Doc. 20) is **DENIED-AS-MOOT**.

**II.   RELEVANT PROCEDURAL HISTORY**

Plaintiff, Dr. Jeffrey Vasseur, commenced this action by filing a Complaint (Doc. 1) with this Court on September 18, 2022 naming Valdosta State University as a Defendant. Pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff had ninety (90) days to perfect service after the filing of his Complaint, or no later than Saturday, December 17, 2022. As of December 20, 2022, Plaintiff had not shown service of process on Defendant. The Court, therefore, ordered Plaintiff to show cause why his Complaint should not be dismissed for failure to serve process. (Doc. 4). Shortly before that Order was entered, Defendant, the Board

1

of Regents of the University System of Georgia, entered a notice of special appearance, filing a Motion to Dismiss Plaintiff's Complaint. (Doc. 3).

Plaintiff complied with the Court's Order (Doc. 4) on December 29, 2022, and filed a Response (Doc. 5) in Opposition to the Defendant's original Motion to Dismiss on January 11, 2023. Included within Plaintiff's Response was a Motion to Amend his Complaint, as well as a Motion for Joinder. (Doc. 6). The Court granted Plaintiff's Motion to Amend his Complaint on January 19, 2023. (Doc. 8). In that Order, the Court also denied Defendant's Motion to Dismiss as Moot without prejudice as well as Plaintiff's Motion for Joinder without prejudice. (Doc. 8).

Plaintiff filed his Amended Complaint (Doc. 9) on January 26, 2023, naming the Board of Regents of the University System of Georgia as a Defendant, and asserting claims for relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623; and 42 U.S.C. §§ 1981, 1983, 1985 & 1986. (Doc. 9).

Defendant moved to dismiss Plaintiff's Amended Complaint on February 9, 2023. (Doc. 11). The Court granted Defendant's Motion to dismiss with respect to Plaintiff's Title VII and Age Discrimination in Employment Act claims. (Doc. 17). The Court denied the motion, however, as to any claim Plaintiff asserts under the "First and Fourteenth Amendments to the U.S. Constitution and under 42 U.S.C. §§ 1981, 1983, 1985, and 1986" because Defendant did not address those claims in its Motion to dismiss. (Doc. 17).

In response, Defendant filed the instant Motion (Doc. 19) for Judgment on the Pleadings (Doc. 19) asking the Court to dismiss the remainder of Plaintiff's claims in his Amended Complaint (Doc. 9) and making specific arguments as to why dismissal is warranted for Plaintiff's Claims under the First and Fourteenth Amendments, and under 42 U.S.C. §§ 1981, 1983, 1985, and 1986.

**III.   RELEVANT FACTUAL SUMMARY**

Plaintiff is a former employee of the English Department at Valdosta State University. (Doc. 9 ¶ 3). Plaintiff was employed as a member of the Valdosta State University English Department for over twenty-five (25) years.[1] (*Id.*) According to Plaintiff, prior to the 2017—2018 school year, Defendant and its administrative staff in the English Department showed great respect and admiration for Plaintiff. (Doc. 9 ¶ 9). Plaintiff alleges that he received outstanding reviews on his teaching prior to this term. (*Id.*)

At some point in the 2017-2018 school year, Plaintiff utilized "salty language" in the classroom. (Doc. 9 ¶ 10). While Plaintiff's Amended Complaint is devoid of context or outline for the following sequence of events, the utilization of "salty language" appears to have sent Plaintiff's career at the Valdosta State University English department into precipitous decline.

Specifically, Plaintiff alleges that despite his use of "salty language" occurring on only one occasion, Defendant, through its employee, Donna Sewell[2], subjected Plaintiff to a barrage of unsubstantiated attacks charging racism, physical violence and intimidation. (Doc. 9 ¶¶ 10-11). It is Plaintiff's position that these attacks on his character continued through backdoor channels and private conversations, creating "an atmosphere of mystery and suspicion" and somehow leading to further charges of Plaintiff attacking and scaring students. (Doc. 9 ¶ 11).

While not explicitly clear from Plaintiff's Complaint, it would appear that the charges of Plaintiff scaring and attacking students led to one Dr. Mark Smith sending an email to Plaintiff "alleging that Plaintiff was a danger to Defendant's community." (Doc. 9 ¶ 13). While once again not explicitly clear, it would appear that Dr. Smith also had placed the Valdosta State University Police on notice regarding Plaintiff's behavior and forwarded an alleged incident report to Dean Connie Richards. (Doc. 9 ¶ 13). Plaintiff alleges that he responded to Dr. Smith's email in December 2017. (Doc. 9 ¶ 14).

Seemingly unrelated to the present claim, but included within the Amended Complaint, on January 20, 2018, one Dr. Sewell, assigned Plaintiff a SMARTPATH course without notice. (Doc. 9 ¶ 15). The Amended Complaint then jumps to February 13, 2018, when Plaintiff's

---

[1] The Court notes for the purposes of the record that it would appear that Plaintiff was employed as a Professor in the English Department for over twenty-five years, although that is not explicitly stated in Plaintiff's Complaint.

[2] The Court notes for the purposes of the record that Plaintiff alleges that Donna Sewell is the Department Head for the English Department. Donna Sewell is not named as a Defendant in this action.

3

father was severely burned. (Doc. 9 ¶ 16). Plaintiff's father's injuries appear to have led to Plaintiff taking time off to take care of his mother and father. (Doc. 9 ¶ 16). Without any context as to what this statement means Plaintiff then states that at this time he "felt overwhelmed by prior generalizations, Dr. Sewell's constant blurring of his background and record, and the bad faith reports."[3] (Doc. 9 ¶ 16).

When Plaintiff returned to the classroom on March 5, 2018, only one student, Ms. Wilson, was present. (Doc. 9 ¶ 17). Ms. Wilson allegedly wished to discuss the results of a midterm exam essay. (*Id.*) Plaintiff and Ms. Wilson walked over to the Student Success Center, which led to Dr. Sewell unilaterally pulling Ms. Wilson out of Plaintiff's course without any notice.[4] (*Id.*) After this incident, at some point Dr. Sewell presented Plaintiff with, and demanded that Plaintiff sign, an action plan, and allegedly claimed Plaintiff "had no choice" but to sign. (Doc. 9 ¶ 18). Dr. Sewell also allegedly stated that Plaintiff is "scary to students" and that "no faculty member has more complaints than you." (Doc. 9 ¶ 19).

On March 25, 2018, Plaintiff received his annual review from Dr. Sewell and was allegedly shocked by its contents. (Doc. 9 ¶ 20). Plaintiff therefore met with one Dr. James T. Laplant and Assistant Dean Teresa Grove, on March 26, 2018. (Doc. 9 ¶ 21). At that meeting, Plaintiff expressed concern regarding the lack of due process; accusations of him having a "race problem" with his teaching and pedagogy; and statements regarding Plaintiff allegedly "attacking two students." (Doc. 9 ¶ 21). The Court notes for the purposes of the record that Plaintiff does not elaborate what came of that meeting.

Plaintiff's Amended Complaint then fast forwards to the Fall 2018 semester, during which Plaintiff alleges that he was working a full schedule, in addition to being an advisor for "Odradek."[5] (Doc. 9 ¶ 22). Plaintiff allegedly spoke with Dr. Sewell about "Odradek," and then goes on to state that under the national standard, a professor receives a course leave per

---

[3] The Court notes for the purposes of the record that it is impossible to tell from Plaintiff's Amended Complaint what Plaintiff means by blurring of his background and record and bad faith reports as it relates to Dr. Sewell as of February 2018. (Doc. 9). It is impossible to tell, because Dr. Sewell is not mentioned as having done anything, other than reassigning Plaintiff a class in January, that would relate to those statements, before February 2018.
[4] The Court notes for the purposes of the record that Plaintiff appears to allege that Ms. Wilson's take-home exam had issues with plagiarism and lack of preparation. (Doc. 9 ¶ 17).
[5] The Court notes for the purposes of the record that Plaintiff did not define what Odradek was, or how it related to course leave.

semester, and two courses per academic year. (Doc. 9 ¶ 22). Plaintiff does not allege that he was denied course leave, however.

Plaintiff's Amended Complaint then jumps to a statement that Plaintiff was informed by Dr. Thompson and Dr. Sewell that human resources classroom observations were there to watch and observe and make sure students have a good time. (Doc. 9 ¶ 23).

Once again, without context, Plaintiff then states that a student named Ms. Page met with Dr. Sewell to discuss grievances about Plaintiff's course assignments. (Doc. 9 ¶ 24). Ms. Page was transferred by Dr. Sewell into another professor's course, without consulting Plaintiff. (*Id.*) Ms. Page then allegedly texted a friend who was in the class, who informed the rest of the class about "what occurred with Dr. Sewell." (Doc. 9 ¶ 24). The Court notes for the purposes of the record that it is patently unclear what "what occurred with Dr. Sewell" means in this context.

The Amended Complaint then fast forwards to March 10, 2019, when Dr. Thompson allegedly spoke with Dr. Sewell about how "one should never do something like this without at least talking once with the instructor." (Doc. 9 ¶ 25). The Court believes that Plaintiff is referencing Dr. Sewell's decision to transfer Ms. Page, but it is once again not clear. Dr. Sewell allegedly responded "[a]re you sure you wanted to be associated in the Provost's mind with the name of Jeffrey Vasseur." (Doc. 9 ¶ 25).

The Amended Complaint then states that Plaintiff began to worry about his students keeping up with reading and assignments on August 22, 2019. (Doc. 9 ¶ 26). And that on September 3, 2019, one Ms. Peguesse called the Valdosta State Police Department following an interaction with Plaintiff at the library. (Doc. 9 ¶ 27). Later that month it would appear in response to the September 3, 2019, incident, Plaintiff had a meeting with Human Resources in which an agreement was forced into Plaintiff's hands and he was told to "[j]ust sign the fucking thing."[6] (Doc. 9 ¶ 28).

The Amended Complaint then fast forwards to the Spring Semester 2020, during which Plaintiff took a paid medical leave of absence to have surgery on a "Hagland's deformity and

---

[6] The Court notes for the purposes of the record that Plaintiff never contextualizes what this meeting with human resources was about, what the agreement pertained to, what its contents stated and, generally, leaves it to the Court to fill in the blanks.

ripped Achilles tendon." (Doc. 9 ¶ 29.) On October 5, 2020, another student allegedly complained to Dr. Sewell about Plaintiff's course. (Doc. 9 ¶ 30).

Following these Complaints, "an online meeting was scheduled in which Plaintiff requests help, faculty representative, and does not want to have an online meeting."[7] (Doc. 9 ¶ 31). While not clear from Plaintiff's Amended Complaint, it would seem that Plaintiff attended the meeting and was informed that Dr. Sewell was the ongoing department head in the English Department. (Doc. 9 ¶ 31). Another meeting was scheduled in May 2021 at which Plaintiff was provided with another action plan and informed that Dr. Sewell would continue to be his supervisor despite Plaintiff's objections. (Doc. 9 ¶ 32). At some point thereafter, Plaintiff resigned, in response to Defendant permitting "such defamatory statements against Plaintiff's character, employment skills and ability, and reputation within the academic community. (Doc. 9 ¶ 46).

The Court notes for the purposes of the record that at no point does Plaintiff allege facts about his age or race playing any role in these disciplinary proceedings. Plaintiff did insert one conclusory statement, as to those factors. (Doc. 9 ¶ 49).

## IV. LAW AND ANALYSIS

Motions for judgment on the pleadings are allowed by Federal Rule of Civil Procedure 12(c) and are subject to the same standard of review as motions to dismiss under Rule 12(b)(6). *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002). The Court, therefore, applies the following standard of review applied to Rule 12(b)(6) motions.

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'"

---

[7] For purposes of the record, the Court notes that it is unsure what, exactly, Plaintiff means by this statement.

6

*Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm and the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of the plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). The Supreme Court instructs that while on a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint). In addition to considering the four corners of a complaint, a district court may also consider an extrinsic document only if it is central to the plaintiff's claim and its authenticity has not been challenged. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC.*, 600 F.3d 1334, 1337 (11th Cir. 2010).

As stated, *supra*, the Court has already dismissed Plaintiff's Title VII and Age Discrimination in Employment Act claims. (Doc. 17). Defendant now moves to dismiss the rest of Plaintiff' Amended Complaint, specifically, Defendant moves to dismiss any claims Plaintiff may have raised under the First and Fourteenth Amendments; and claims brought under 42 U.S.C. §§ 1981, 1983, 1985, and/or 1986.

### A. Eleventh Amendment Immunity

Defendant contends that it is entitled to Eleventh Amendment Sovereign Immunity for Plaintiff's claims under the First and Fourteenth Amendment; and 42 U.S.C. §§ 1981, 1983, 1985, and/or 1986 and, accordingly, the Court should dismiss Plaintiff's claims.[8] Plaintiff contends that Defendant has waived its Sovereign Immunity by participating in the litigation. (*See* Docs. 14 & 15).[9]

Eleventh Amendment Sovereign Immunity bars suits brought in federal court when the "State itself is sued and when an 'arm of the State' is sued.'" *Manders v. Lee*, 338 F.3d 1304, 1328 (11th Cir. 2003) (*en banc*) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429–30 (1997)). Defendant, the Board of Regents of the University System of Georgia, is the state agency vested with the governance, control, and management of the University System of Georgia. *Olvera v. Univ. Sys. of Ga.'s Bd. of Regents*, 782 S.E.2d 436, 438 (Ga. 2016) (citing Ga. Const. Art. VIII, Sec. IV, Par. I(b)). For the purposes of the Eleventh Amendment, therefore, Defendant is a State entity that is an arm of the State of Georgia. *Nicholl v. Bd. of Regents of Univ. Sys. of Ga.*, 2016 WL 9651773 (N.D. Ga. 2016) *aff'd*, 706 F. Appx. 493 (11th Cir. 2017) (citing *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012)); *see Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616–17 (2002) (addressing whether the Board had waived its Eleventh Amendment Sovereign Immunity in that particular case). Accordingly, Defendant is an arm of the State which is entitled to Eleventh Amendment Sovereign Immunity. A party may sue a State entity entitled to Sovereign Immunity, however, in two situations: (1) if the State has waived its own immunity, or (2) Congress has validly abrogated the State's immunity to enforce the substantive provisions of the Fourteenth Amendment. *Stroud v. McIntosh*, 722 F.3d 1294, 1298 (11th Cir. 2013) (citing *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)).

---

[8] Valdosta State University, the other named Defendant in the case, is not a separate or distinct entity from the Board of Regents of the University of Georgia, and, thus, cannot sue or be sued. *See Board of Regents of the University System of Ga. v. Doe*, 630 S.E.2d 85, 879 n. 1 (Ga Ct. App. 2006); O.C.G.A. § 20-3-51 ("the government, control, and management of the university system and all of its institutions shall be vested in the board of regents"). Accordingly, if Eleventh Amendment immunity bars Plaintiff's claims against USG, the Court should dismiss the action.

[9] The Court notes for the purposes of the record that Plaintiff cited no authority in support of this argument.

### i. Waiver

The Court will first address whether the Defendant has waived its Eleventh Amendment Sovereign Immunity, as Plaintiff argues that it has done by participating in litigation. (Doc. 15, at 7). Courts will find a waiver of Sovereign Immunity by litigation conduct if a State voluntarily invokes federal jurisdiction, or if the State makes a "clear declaration" that it intends to submit itself to federal jurisdiction. *Barnes*, 669 F.3d at 1309 (citing *College Sav. Bank*, 527 U.S. at 675–76). The decision to waive Sovereign Immunity "is altogether voluntary on the part of the sovereignty," and, accordingly, the test for determining whether a State has waived Sovereign Immunity "is a stringent one" *College Sav. Bank*, 527 U.S. at 675.

Here, nothing in Defendant's litigation conduct leads the Court to conclude that it voluntarily invoked federal jurisdiction or clearly declared that it intended to submit itself to federal jurisdiction. Instead, Defendant appeared in the lawsuit only for the purposes of dismissing the lawsuit, and then asserted Eleventh Amendment Sovereign Immunity soon after, and has not made any subsequent declaration, clear or otherwise, that it wishes to waive Eleventh Amendment Sovereign Immunity. *See* (Docs. 9, 11, & 18).[10] Accordingly, the Court finds that the Defendant did not waive its sovereign immunity through its litigation conduct.

### ii. Congressional Abrogation

The Court turns next to whether Congress has validly abrogated Defendant's Eleventh Amendment Sovereign Immunity for the claims in this action. The Fourteenth Amendment Section 5 grants Congress the power to enforce the substantive provisions of the Amendment by creating private remedies against the States directly. *National Ass'n of Bds. of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1315–16 (11th Cir. 2011) (citing *United States v. Georgia.*, 546 U.S. 151, 158 (2006); *City of Boerne v. Flores*, 521 U.S. 507, 518–20 (1997)). Congress, therefore, may abrogate State Sovereign Immunity through legislation. *National Ass'n of Bds. of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1313 (11th Cir.

---

[10] In more detail, Defendant appeared as a party in this litigation when Plaintiff incorrectly sued a subsidiary of Defendant, Valdosta State University. (*See* Doc. 1). This error led to Defendant filing a "special appearance motion to dismiss" Plaintiff's Complaint. (Doc. 3). Defendant's filing of their motion did not, by itself, voluntarily invoke Federal jurisdiction—as might occur upon the filing of a Complaint or a notice or removal—and by designating the motion as a "special appearance" only to argue for the case to be dismissed, Defendant clearly indicated it did not wish to be a party to the litigation. After Plaintiff amended his complaint to properly name Defendant, the Board filed a second Motion to Dismiss (Doc. 11) which argued for dismissal based on Eleventh Amendment Sovereign Immunity and an Answer (Doc. 18) which raised Eleventh Amendment Sovereign Immunity as a defense.

9

2011). A Court should find that Congress has abrogated Sovereign Immunity for a particular statute, however, only when it makes its intent to do so "unmistakably clear." *Florida Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Fla.*, 166 F.3d 1126, 1131 (11th Cir. 1999) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (11th Cir. 1999); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). Plaintiff brings claims under the First and Fourteenth Amendment by way of 42 U.S.C. § 1983, as well as claims under 42 U.S.C. §§ 1981, 1985, and 1986. The Court will address each in turn.

### a. Section 1983

Although Plaintiff asserts that the Action arises under "the First and Fourteenth Amendments to the U.S. Constitution," (Doc. 1, at 1 ¶ 1) there is no direct cause of action under the First or Fourteenth Amendment. Instead, Section 1983 "provides the exclusive federal remedy" for deprivations of the First and Fourteenth Amendment by State actors.[11] *See Collier v. Ala. Dept. of Transp.* 2017 WL 3394737 *4 (N.D. Ala. 2017) (citing *Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir. 1982)). Thus, Plaintiff's claims under the First and Fourteenth amendment are barred by Sovereign Immunity unless Congress specifically abrogated Sovereign Immunity for Section 1983.

Both the Eleventh Circuit, and the Supreme Court have consistently found that Congress, in enacting Section 1983 and its progenitors, did not intend to abrogate Sovereign Immunity. *Robinson v. Ga. Dep't of Transp.*, 966 F.2d 637, 640 (11th Cir. 1992) (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979), *cert. denied*, 506 U.S. 1022 (1992)); *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)). Thus, the Court finds that Congress has not abrogated Eleventh Amendment Sovereign Immunity for Section 1983 actions, and, as a result, Plaintiff's claims against Defendant under the First and Fourteenth Amendment, are barred by Eleventh Amendment Sovereign Immunity. Accordingly, Defendant's Motion for Judgment on the Pleadings with respect to Plaintiff's claims under the First and Fourteenth Amendment is **GRANTED**.

---

[11] Although Section 1983 directly concerns the Fourteenth Amendment, the First Amendment is applicable to the States only via the Due Process Clause of the Fourteenth Amendment. *See e.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 466 (1958). Section 1983, therefore, also provides the remedy for violations of the First Amendment by State actors. *See Alves v. Bd. of Regents of the Univ. Sys. Ga.*, 804 F.3d 1149, 1159 (11th Cir. 2015).

### b. Section 1981

Section 1981 provides substantive rights, beyond those guaranteed in the Constitution, meant to proscribe discrimination in the making or enforcement of contracts. *Gratz v. Bollinger*, 539 U.S. 244, 276 n. 23 (2003) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295–296 (1976)). Section 1981, however, does not create a direct cause of action, instead, like the First and Fourteenth Amendment, Section 1983 provides the exclusive remedy for deprivations of the rights contained in Section 1981. *Butts v. Cty. Of Volusia*, 222 F.3d 891, 892–895 (11th Cir. 2000) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (2000)). Plaintiff's claims against Defendant brought under Section 1983, as noted, are barred by Eleventh Amendment Sovereign Immunity. Thus, because Section 1983 provides the exclusive remedy for deprivations of Section 1981, Sovereign Immunity bars any claim Plaintiff might bring under Section 1981 against Defendant. Accordingly, Defendant's Motion for Judgment on the Pleadings (Doc. 19) with respect to Plaintiff's claims under 42. U.S.C. Section 1981 is **GRANTED**.

### c. Sections 1985 and 1986

Section 1985 creates a cause of action for conspiracies to deprive Plaintiffs of civil rights. *See e.g.*, *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (citing 42 U.S.C. § 1985(3)). And Section 1986 creates a cause of action for failing to prevent a conspiracy as defined in Section 1985. *See* 42 U.S.C. § 1986. Like Section 1983 actions, Congress has not abrogated Sovereign Immunity for Section 1985 actions. *Henry v. Fla. Bar*, 701 F. Appx. 878, 881 (11th Cir. 2017) (citing *Fincher v. State of Fla. Dept. of Lab. and Emp. Sec.*, 798 F.2d 1371, 1372 (11th Cir. 1986)). Plaintiff's claims against Defendant under Section 1985 are, therefore, barred by Eleventh Amendment Sovereign Immunity. As a result, Plaintiff's claims under Section 1986 are also barred. *See Henry*, 701 F. Appx. at 881. Accordingly, Defendant's Motion for Judgment on the Pleadings (Doc. 19) with respect to Plaintiff's claims under 42 U.S.C. §§ 1985 & 1986 is **GRANTED**.[12]

---

[12] The Court notes, for the purposes of the record, that Defendant also argues that Plaintiff's claims under Sections 1985 and 1986 should be dismissed for failure to state a claim. (*See* Doc. 19, at 9–13). Because the Court finds that those claims are barred by Eleventh Amendment Sovereign Immunity, the Court has no need to reach the question of whether Plaintiff states a claim upon which relief can be granted on any additional ground.

**IV. CONCLUSION**

In sum, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings with respect to Plaintiff's claims under the First and Fourteenth Amendments; and under 42 U.S.C. §§ 1981, 1983, 1985, & 1986 which are the only claims remaining in Plaintiff's Amended Complaint (Doc. 9), Accordingly, Plaintiff's Amended Complaint is hereby **DISMISSED**. Moreover, Defendant's Motion to Stay Discovery and All Pre-Trial Deadlines Pending Resolution of Defendant's Motion for Judgment on the Pleadings (Doc. 20). is hereby **DENIED-AS-MOOT** because the Court has dismissed the above-styled action.

**SO ORDERED**, this 19th day of October 2023.

                                                     **/s/ W. Louis Sands**
                                                   **W. LOUIS SANDS, SR. JUDGE**
                                                   **UNITED STATES DISTRICT COURT**